UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **PATAGON MANAGEMENT LLC**, <br><br> Plaintiff, <br><br> -against- <br><br> **WEI "MAX" WU**, <br><br> Defendant. | Case No. _____ <br><br> **JURY TRIAL DEMANDED** <br><br> <u>**COMPLAINT**</u> |

Plaintiff Patagon Management LLC, by its undersigned counsel, alleges as follows, based upon knowledge as to its own acts and upon information and belief as to all others, including an investigation conducted by Plaintiff's attorneys.

## INTRODUCTION

1. This case is regarding the unregistered sale of securities to investors, including Plaintiff, and Defendant Wei Wu's breach of his contractual obligations to those investors when he reneged on his promises to develop certain products and governance features related to those securities. Defendant Wu's breach has unjustly enriched him at his investors' expense, and he continues to hold hostage more than $30,000,000 belonging to investors. Plaintiff alleges four causes of action against Defendant: (1) breach of contract, (2) violations of Sections 5 and 12(a)(1) of the Securities Act of 1933, (3) unjust enrichment, and (4) money had and received. Plaintiff seeks compensatory and equitable relief, including recission, together with pre- and post-judgment interest, fees, and costs of suit as well as any other relief the court deems just and proper.

## PARTIES

2. Plaintiff Patagon Management LLC ("Plaintiff") is a Delaware limited liability company, with a registered address at 1000 N. West St., Ste. 1501, Wilmington, DE 19801.

Plaintiff's principal address is 379 W. Broadway, New York, NY 10012.  On or about September 19, 2022, Plaintiff began investing in Defendant's scheme described further below by purchasing "SPA tokens," which Defendant offered and solicited to Plaintiff.  As the scheme unfolded and came to light, Defendant Wu subsequently absconded with investments from Plaintiff and others totaling approximately $30,000,000.

3. Upon information and belief, Defendant Wei "Max" Wu ("Defendant") is an individual who previously resided and/or conducted business at 315 W. 36th St., Flr 10, New York, NY 10018.  Upon information and belief, this address is associated with another scheme affiliated with Defendant Wu intended to take advantage of unsuspecting investors.[1]  Defendant Wu is the founder, creator, and primary developer of the scheme laid forth in this Complaint to harm Plaintiff and those similarly situated via the Spartacus Finance DAO ("Spartacus DAO"), a scam disguised as a legitimate project for which he solicited investments with no intent to deliver.  On December 28, 2022, Plaintiff's counsel sent a demand letter to Defendant Wu at his email address, maxawei@gmail.com.  Although no formal response was received, communications by "Spartacus" via Discord imply that "Spartacus" received the demand letter.  Upon information and belief, Defendant Wu operates under the pseudonym "Spartacus," and blockchain-affiliated addresses, websites, and emails associated with maxawei@gmail.com have been used to perpetrate the Spartacus DAO scheme.

---

[1] *See Vinci 2.0-World's First Standalone Smart Wireless Headphones*, KICKSTARTER.COM, https://www.kickstarter.com/projects/inspero/vinci-20-worlds-first-standalone-ai-sports-headpho/ ("Founded in September 2014, Inspero Inc. was started by two MIT MBA Alumni, David Zhu and Max Wu.")  The registered business address of Inspero Inc. is 315 W. 36th St., Flr 10, New York, NY 10018 (https://bbb.org/us/ny/new-york/profile/online-retailer/inspero-inc-0121-174307).

## JURISDICTION AND VENUE

4. The Court has federal jurisdiction under 28 U.S.C. § 1331 because the Complaint asserts claims under Sections 5 and 12(a)(1) of the Securities Act of 1933 ("Securities Act").

5. The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a), which gives district courts supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

6. The Court has personal jurisdiction over Defendant Wu because he has transacted business, maintained substantial contacts, and/or committed overt acts in furtherance of the disputed conduct throughout the United States, including in the Southern District of New York. Further, Defendant Wu's actions were directed at, and had the intended effect of, causing injury to persons residing in, located in, or doing business throughout the United States, including in the Southern District of New York.

7. Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which he is subject to the Court's personal jurisdiction, and because Defendant provides and markets his services within the United States, and in this district, thus establishing sufficient contacts to give the Court personal jurisdiction over Defendant. In addition, Defendant's conduct against Plaintiff has occurred, in part, within the state of New York as the harmful effects of Defendant's conduct were suffered within the state of New York.

8. Further, the Court has personal jurisdiction and venue is proper over this action pursuant to Section 22 of the Securities Act, 15 U.S.C. § 77v.

## FACTUAL ALLEGATIONS

9. Prior to October 25, 2021, Defendant Wu—under the pseudonym "Spartacus"—hatched a scheme to solicit an enormous amount of funds from unsuspecting persons under the auspices of creating a pool of assets that would, as he promised, generate massive returns for these participants, whom Defendant referred to as the "community" of "Spartacus DAO." A "DAO" is a "Decentralized Autonomous Organization" which, in common practice, involves a group of stakeholders coming together to make decisions, typically facilitated by a blockchain-based voting system. By branding his scheme as a DAO, Defendant Wu misled investors, including Plaintiff, into believing they would have some say in the direction of the venture.

10. In contrast to this pitch of decentralization and "community" governance, Defendant Wu was the sole operator of Spartacus DAO with any managerial authority, which he used to take advantage of the unsuspecting investors. From at least October 25, 2021 to the present, Defendant engaged in a pattern of conduct that included marketing and selling unregistered securities to Plaintiff and others. Defendant ultimately reneged on all the promises he had made to the Spartacus DAO "community," including Plaintiff, who received nothing while Defendant absconded with more than $30,000,000 of their invested funds.

11. To accomplish this scheme, Defendant Wu took advantage of a popular group investment structure wherein a group of persons contribute "liquidity" to a pool of funds. Defendant represented that the funds would be contributed to a common "treasury" which he promised would grow through various ventures and projects that he would oversee, including employing "strategies to earn risk-adjusted return with [community] governance." Defendant also

promised to build various products with the funds and return profits from those products to the investors, including Plaintiff.[2]

12.     In furtherance of the scheme, Defendant Wu publicized and conducted a sale of blockchain-based digital asset SPA tokens ("SPA tokens" or "SPA") to Plaintiff and other U.S. persons via online platforms including Discord, Twitter, and other social media, as well as prominently on the Spartacus website and blog, and Defendant did not take any action to prevent access to these publications or sales by U.S. persons, including Plaintiff.[3]  SPA tokens are fungible blockchain-based assets that Defendant promised would be "the governance token for Spartacus DAO."[4]  Beginning on or about October 31, 2021, Defendant Wu minted and sold 30,000 SPA tokens at a price of approximately $10 per token on a first-come, first-serve basis—including to cryptocurrency wallets controlled by Defendant himself.[5]  As time went on, Defendant minted and sold more SPA tokens at various prices, on each occasion promising that the returns would be used to build value for holders of the tokens.

13.     SPA tokens are securities under federal securities law.  Purchasers of SPA, including Plaintiff, had a reasonable expectation of future profit based upon Defendant Wu's marketing of the tokens and his efforts in managing Spartacus DAO and its "treasury."  Defendant represented that the funds generated from the initial offering would be used to fund Spartacus DAO's development work (including through self-interested payments to Defendant himself for said development).  Defendant promised returns on investment for purchasers of SPA, including

---

[2] *See* Spartacus Finance blog, *Introducing Spartacus*, https://docs.spartacus.finance/introducing-spartacus/introducing-spartacus (last visited Mar. 29, 2023); *Bonding*, https://docs.spartacus.finance/guides-to-arena/bonding (last visited Mar. 29, 2023).
[3] *See generally*, https://app.spartacus.finance/#/dashboard (last visited Mar. 29, 2023).
[4] Spartacus Finance blog, *Introducing Spartacus*, https://docs.spartacus.finance/introducing-spartacus/introducing-spartacus (last visited Mar. 29, 2023).
[5] Documentation regarding this sale was provided on the Spartacus website (*see* https://app.spartacus.finance/#/dashboard) as well as through announcements on the Spartacus Discord server (*see* https://discord.gg/WHVARU4KzV/).

160824233.4

through dividend-like instruments and an increased future value of the token on secondary markets. Defendant also promised to build products, including a cryptocurrency exchange, that would incorporate and increase the value of SPA and related assets. In totality, Defendant promised SPA purchasers long-term, passive returns based on his purported efforts. The success of SPA tokens, and the Spartacus DAO itself, was dependent on Defendant Wu as the sole controller of the assets in its "treasury." SPA tokens are tradable on secondary markets, a fact which Wei Wu included in his marketing of the tokens.

14. As a result of the foregoing, SPA tokens were sold in an unregistered offering without an applicable exemption or safe harbor.

15. Despite his many promises, Defendant Wu only took one material action with respect to managing Spartacus DAO: disappearing with the accumulated funds.

16. The SPA tokens were sold in an unregistered offering without an applicable exemption or safe harbor. This means that purchasers like Plaintiff did not have access to the usual disclosures that accompany the issuances of traditional securities. Rather than any material progress or matters to vote on, Plaintiff and other investors received vague, sporadic blog posts and Discord announcements describing the alleged future growth of Spartacus DAO and the SPA tokens—with increasingly less transparency as Defendant's scheme began to unravel.

17. After the initial sale, Defendant Wu actively precipitated the sale of SPA by continuing to offer and solicit purchases of the token through an extensive marketing campaign on the Spartacus website and social media.[6]

---

[6] SPA tokens were technically sold in the form of very short-dated SPA bonds, which could be redeemed for SPA tokens over a 5-day period. These short-dated bonds were offered continuously from early November 2021 until April 2022 and resulted in tens of millions of dollars in proceeds for the "treasury."

18. Falling well short of satisfying the requirements for a prospectus under federal securities laws, these statements only served to pull investors like Plaintiff further into Defendant Wu's scam. Over time, the "treasury" accumulated more than $30,000,000 worth of assets; however, this "treasury" was under the sole control of Defendant, who held the private keys to the blockchain-based technology holding the funds. Defendant Wu's promises of "community"-based control, governance, and voting that were sold to investors along with the SPA tokens led them to believe SPA could be used as pro rata shares of governance in the venture. Instead, the substantial pool of funds has always been, and continues to be, under the sole control of Defendant Wu.

19. In early April 2022, approximately six months following the initial sale of SPA, nearly $61,000,000 in funds had amassed in the "treasury" under Defendant Wu's sole control.

20. As their suspicions began to grow, investors started to raise concerns about the status of the project. On Discord, Defendant Wu (as "Spartacus") called these concerned investors "[…value] hunters" and disregarded their complaints, promising "a rising floor for SPA and [that he would] continue to build a valu[able] foundation for SPA." While investors clamored for answers on the lack of both progress and communication, Defendant came up with a second act for his scheme.

21. On or about April 6, 2022, Defendant Wu (as "Spartacus") made a Discord post titled, "Announcing Spartacus 2.0: The next phase of Spartacus Finance." In that post, Defendant announced that he would be creating a new for-profit venture: a decentralized cryptocurrency exchange called Spartacus Exchange ("SPEX").

22. In addition to setting forth a new promise of success (on which Defendant Wu did not plan to deliver for anyone aside from himself), the post purported to address the concerns of the misled investors—while enticing even further investment into the scheme. In the post,

Defendant promised that current holders of SPA could redeem their tokens at an amount he referred to as their risk-free value ("RFV"), based on a "snapshot" (or recorded list of holders) taken approximately 10 minutes before the announcement. According to Defendant Wu, the RFV could be calculated by accounting for the value of the "treasury" in relation to the number of SPA tokens investors had already contributed to a staking pool (a particular interest-bearing disposition of SPA tokens meaning the investor had pledged their tokens to the pool in exchange for the promise of return as published by Defendant).

23. Of course, Defendant Wu was dependent on investors not removing their funds from this staking pool. In furtherance of the scheme, Defendant doubled down on his plan by offering certain incentives to those who did *not* redeem their SPA tokens. In particular, he enticed investors with assurances of future returns, including "buyback[s]" of SPA, to "maintain[] constant buy pressure" which would manipulate the market for SPA and inflate its value. Further, he promised perpetual returns to SPA holders by way of "emissions" (essentially additional token rewards paid out over time), as well as allocations of an additional, second security—the fungible token termed "SPEX."[7]

---

[7] Spartacus Finance blog, *Announcing Spartacus 2.0*, https://docs.spartacus.finance/announcing-spartacus-2.0/announcing-spartacus-2.0 (last visited Mar. 29, 2023).

> **Part III - back to the future: SPA 2.0** #
>
> For SPA holders who choose to stay with us on the new journey and all future SPA holders, we have some great news for you:
>
> 1. All SPAs will be perpetually backed by the SPA treasury, and receive RFV value in case of a full distribution of treasury.
> 2. 50% transaction fee earnings on Spartacus DEX will be used to buyback SPA, maintaining constant buy pressure.
> 3. SPA holders (post redemption) will receive 2% of the SPEX emission in perpetuity (pro rata) on Fantom, as well as emission rewards on Ethereum mainnet.
>
> SPA treasury will be airdropped 10% of the total supply of SPEX.
>
> SPEX is going to have some of the most market competitive pools comprised of major tokens such as FTM, DAI and USDC. Funds in these pools will perpetually earn 0.1% transaction fee on all TXs on volatile assets and 0.01% fee on stable assets, allow them to be the perpetual value creating engines for SPEX and SPA holders.

24.    In addition to the appearance of progress, Defendant Wu needed to create an illusion of participatory governance. Shortly after making the blog post, Defendant orchestrated a vote of SPA holders on April 7, 2022, where voters could respond with only a simple indication of yes or no on a proposal that included the redemption option and approval to build Spartacus 2.0. The vote passed with 99.99% in favor and 00.01% against.[8]

---

[8] *SIP-015: Spartacus 2.0 with the redemption option*, SNAPSHOT.ORG, https://snapshot.org/#/spartacusdao.eth/proposal/0x34656a7bd9e58821f4cb81d0ca374bd14fa3966235fe0e7c03397a7045d84340 (last visited Mar. 29, 2023).



25. It is important to note that the redemption option (essentially a tender offer) was sprung upon investors without warning based on a snapshot of holdings already taken and was only announced on the Spartacus Discord server, which—despite being the main channel of ongoing communication—was a forum where Defendant would freely ban participants who questioned his governance from viewing or utilizing.

26. Whether it was because investors believed in the promise of Spartacus 2.0, or because a substantial amount of them didn't even know about the vote, roughly half of the investor-held SPA tokens were not redeemed and, as a result, half of the assets held prior to April 6, 2022 remained in the "treasury" after the redemption – totaling roughly $30,000,000.

27. On information and belief, prior to the announcement, Defendant Wu accumulated additional SPA tokens in anticipation of the redemption which he, of course, controlled. In particular, it is believed that Defendant used 18 distinct cryptocurrency wallets to directly reap proceeds in excess of $4,300,000. Thus, the single biggest participant in the redemption was none other than Defendant Wu himself, given his control of at least 18 different wallets. On information

and belief, Defendant purchased SPA in the weeks leading up to the redemption announcement, thus personally profiting from his insider knowledge of the timing and price of the redemption.

28. Plaintiff began acquiring SPA in September 2022 and has purchased 5,382 SPA to date. Plaintiff was persuaded to believe SPA could truly be used for governance by Defendant Wu's assurances, coupled with the misleading one-time redemption that did result in actual gains. As a holder of SPA tokens, Plaintiff is entitled to his share of the "treasury" assets pursuant to the promises made by Defendant.

29. However, Defendant Wu had no intention to build or launch Spartacus 2.0, nor to provide any type of tangible continued return to investors. Instead, he disappeared for weeks at a time, while putting investors off with bland assurances of progress and leaving them in limbo as only he had access to the "treasury."

30. As time dragged on with no development or adequate response, Plaintiff and the other investors came to the realization that Spartacus DAO was a scam and that Defendant Wu had deceived them.

31. On September 22, 2022, five months after the Spartacus 2.0 announcement, Spartacus DAO investors—holders of SPA tokens who were told by Defendant Wu that their tokens were voting shares in the venture—organized and held a vote of no confidence in the Spartacus DAO leadership, namely Defendant Wu. The purpose of this vote was to dissolve the Spartacus DAO and to give token holders another opportunity to redeem their tokens. In order to pass, the vote required that both a supermajority (75%) and a quorum (20%) of SPA token holders

vote in favor of dissolution. The vote opened on September 22 and passed on September 29, 2022, with 100% of participants voting in favor of dissolution and redemption.[9]



32. In a breach of his contractual promises to treat the holders of SPA as governing members of the Spartacus DAO project, Defendant Wu took issue with the vote when it was proposed and subsequently refused to act in accordance with its results. Both during and after the vote, Defendant posted derogatory comments on Discord, calling voters RFV "looters" and "hunters" while simultaneously affirming SPA's status as a security dependent on his efforts.

---

[9] *SpartacusDAO Dissolution*, SNAPSHOT.ORG, https://snapshot.org/#/spacommunity.eth/proposal/0x4996f5b5d6e33ed34638ffcc4dda7d20557b11193260b773eae133c689b63a09 (last visited Mar. 29, 2023).




33. Defendant Wu subsequently ignored all calls for him to honor his promises and relinquish control of the "treasury," and on December 28, 2022, Plaintiff's counsel sent a demand letter to Defendant via email at maxawei@gmail.com. On January 16, 2023, Defendant returned to Discord offering more excuses and promising to "come back with plans forward," suggesting Defendant received the demand letter. Unsurprisingly, Defendant instead vanished once more, only to reappear on March 10, 2023, with the suggestion that he "diversify" the "treasury's" assets when the recent banking crisis caused a portion of those assets (more than $30,000,000, all under Defendant's control) to be at risk.

34. As one community member described, this statement by Defendant "after months of ghosting" amounted to "another 'take it or leave it' omnibus proposal that ignore[d] all community input" contrary to promises of the exact opposite made during the members' initial investments.



35. To date, Defendant Wu has not allowed SPA holders to redeem their tokens despite the September 2022 vote results which clearly satisfied supermajority and quorum requirements.

36. Based on the facts set forth above, Defendant Wu (1) breached his contractual obligations to Plaintiff, (2) sold unregistered securities in violation of federal securities law, (3) was unjustly enriched by these actions, and (4) has retained money owed to Plaintiff. As a result, Plaintiff brings claims to recover compensatory damages in an amount to be determined at trial, rescissory damages, and any other relief that this Court deems proper and just.

## CAUSES OF ACTION

### COUNT I
### Breach of Contract

37. Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

38. Plaintiff and Defendant Wu entered into a contract when Plaintiff purchased SPA tokens from Defendant. In exchange for Plaintiff's purchase, Defendant promised to implement certain features to support the Spartacus DAO, to help investors like Plaintiff generate profits from their purchased tokens, and to allow for token redemption opportunities. In addition, Defendant promised that SPA holders would have governing rights in the Spartacus DAO, including with

respect to how funds would be used, as well as when and whether to redeem them. Defendant has yet to perform any of their contractual obligations to Plaintiff and has not honored the results of the no confidence vote to allow Plaintiff to redeem their SPA tokens. Further, the value of SPA tokens has decreased dramatically since the time of the vote and will likely continue to decrease while Defendant improperly withholds Plaintiff's funds.

39. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered substantial damages in an amount to be determined at trial.

## COUNT II
### Unregistered Offer and Sale of Securities
### Sections 5 and 12(a)(1) of the Securities Act of 1933

40. Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

41. Section 5(a) of the Securities Act states: "Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly (1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or (2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale." 15 U.S.C. § 77e(a).

42. Section 5(c) of the Securities Act states: "It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior

to the effective date of the registration statement) any public proceeding or examination under section 77h of this title." *Id*. § 77e(c).

43. Defendant Wu promoted, solicited, or sold SPA tokens and SPA bonds to Plaintiff through the internet, Discord, and other forms of electronic communication. Thus, Defendant used instruments of communication in interstate commerce to offer to sell or to sell securities, or to carry or cause such securities to be carried through the mails or in interstate commerce for the purpose of sale or for delivery after sale. No registration statements have been filed with the SEC or have been in effect with respect to any of the offerings alleged herein as required by Section 5 of the Securities Act, 15 U.S.C. § 77e.

44. Section 12(a)(1) of the Securities Act provides in relevant part: "Any person who offers or sells a security in violation of section 77e of this title . . . shall be liable, subject to subsection (b), to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security." *Id*. § 77(a)(1).

45. At the time of issuance, the SPA tokens and SPA bonds were securities within the meaning of Section 12(a)(1) of the Securities Act, 15 U.S.C. § 77e(c) because they involved an investment in a common enterprise with the expectation that profits or other gain would be produced by others' efforts, as demonstrated by the foregoing allegations.

46. As demonstrated above, Defendant Wu has violated Sections 5(a), 5(c), and 12(a)(1) of the Securities Act, and Plaintiff seeks rescissory damages regarding their purchase of SPA tokens within the last three years and within one year from when an investor could adequately plead that SPA tokens are a security. *Id*. § 77m.

## COUNT III
### Unjust Enrichment

47. Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

48. Defendant Wu has been enriched at Plaintiff's expense such that it would be against equity and good conscience to permit Defendant to retain the money that Plaintiff is owed.

49. Upon information and belief, Defendant Wu has benefited from withholding Plaintiff's investment funds by using the money to further development of other projects with no benefit to Plaintiff and for Defendant's personal gain.

50. It is against equity and good conscience to permit Defendant Wu to retain the money that Plaintiff is owed due to Defendant's own conduct through breach of contract (described in Count I abvoe) and by performing other illegal or inequitable actions to damage Plaintiff. Defendant has chosen not to honor the promises he made related to governance by SPA token holders during their initial investments and has instead refused to allow those holders to redeem their rightfully-owned tokens.

51. As a direct and proximate result of Defendant Wu's wrongful retention of Plaintiff's investment funds, Defendant has been unjustly enriched at Plaintiff's expense.

## COUNT IV
### Money Had and Received

52. Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

53. Defendant Wu obtained money belonging to Plaintiff when Plaintiff purchased SPA tokens from Defendant. Said tokens were purchased by Plaintiff with the expectation of profit and the understanding that Defendant would allow Plaintiff to redeem the tokens at a later date.

54. Upon information and belief, Defendant Wu has benefited from withholding Plaintiff's investment funds by using the money to further development of other projects with no benefit to Plaintiff and for Defendant's personal gain or has otherwise withheld the funds from Plaintiff.

55. Plaintiff and other investors have voted for redemption opportunities purportedly afforded to them by the governance described by Defendant Wu during their initial investments; however, Defendant has unilaterally refused to allow Plaintiff to redeem their tokens. Thus, under principles of equity and good conscience, Defendant should be required to honor his initial promises, as well as the results of the second redemption vote, and should not be permitted to unjustly withhold Plaintiff's funds.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment against Defendant, awarding Plaintiff: (1) compensatory damages in an amount to be determined at trial, (2) rescissory damages, and (3) any other relief the Court deems just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b).

Dated: March 31, 2023

John R. Hardin
**PERKINS COIE LLP**
500 N. Akard Street, Suite 3300
Dallas, TX 75201
Tel: (214) 965-7700
Fax: (214) 965-7799
JohnHardin@perkinscoie.com
(*pro hac vice admission forthcoming*)

Will M. Conley
**PERKINS COIE LLP**
33 East Main Street, Suite 201
Madison, WI 53703
Tel: (608) 294-4013
Fax: (608) 663-7499
WConley@perkinscoie.com
(*pro hac vice admission forthcoming*)

Respectfully submitted,

By: */s/ Hellen Park*
Hellen Park (HP 2935)
**PERKINS COIE LLP**
1155 Avenue of the Americas, 22nd Floor
New York, NY 10122
Tel: (212) 262-6900
Fax: (212) 977-1649
HPark@perkinscoie.com

*Attorneys for Plaintiff*
*Patagon Management LLC*