**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **PATAGON MANAGEMENT LLC**, | **Case No. 1:23-cv-02742-VM** |
| Plaintiff, | **Hon. Victor Marrero** |
| -against- | |
| **WEI "MAX" WU**, | **AMENDED COMPLAINT** |
| Defendant. | |

Plaintiff Patagon Management LLC, by its undersigned counsel, alleges as follows, based upon knowledge as to its own acts and upon information and belief as to all others, including an investigation conducted by Plaintiff's attorneys.

## INTRODUCTION

1.      This case is regarding the unregistered sale of securities to investors, including Plaintiff, and Defendant Wei Wu's breach of his contractual obligations to those investors when he reneged on his promises to develop certain products and governance features related to those securities.  Defendant's breach has unjustly enriched him at his investors' expense, and he continues to hold hostage more than $35,000,000 belonging to investors.  Plaintiff alleges seven causes of action against Defendant: (1) breach of contract, (2) violations of Sections 5 and 12(a)(1) of the Securities Act of 1933, (3) unjust enrichment, (4) money had and received, (5) specific performance, (6) imposition of a constructive trust, and (7) equitable accounting.  Plaintiff seeks compensatory and equitable relief, including rescission, an injunction, specific performance, imposition of a constructive trust, and an accounting together with pre- and post-judgment interest, fees, and costs of suit as well as any other relief the court deems just and proper.

## PARTIES

2.      Plaintiff Patagon Management LLC ("Plaintiff") is a Delaware limited liability company, with a registered address at 1000 N. West St., Ste. 1501, Wilmington, DE 19801. Plaintiff's principal address is 379 W. Broadway, New York, NY 10012.  On or about September 19, 2022, Plaintiff began investing in Defendant Wu's scheme described further below by purchasing "SPA tokens," which Defendant offered and solicited to Plaintiff.  As the scheme unfolded and came to light, Defendant subsequently absconded with investments from Plaintiff and others totaling approximately $35,000,000.

3.      Upon information and belief, Defendant Wei "Max" Wu ("Defendant") is an individual who previously resided and/or conducted business at 315 W. 36th St., Flr 10, New York, NY 10018.  Upon information and belief, this address is associated with another scheme affiliated with Defendant intended to take advantage of unsuspecting investors.[1]  Defendant is the founder, creator, and primary developer of the scheme laid forth in this Complaint to harm Plaintiff and those similarly situated via the Spartacus Finance DAO ("Spartacus DAO"), a scam disguised as a legitimate project for which he solicited investments with no intent to deliver.  On January 3, 2023, Plaintiff's counsel sent a demand letter to Defendant at email addresses associated with Spartacus DAO: maxawei@gmail.com and spartacusfinance@gmail.com.  Although no formal response was received, communications by "Spartacus" via Discord imply that "Spartacus" received the demand letter.  Upon information and belief, Defendant operates under the pseudonym "Spartacus," and blockchain-affiliated addresses, websites, and emails associated with

---

[1] *See Vinci - First Smart Headphones with Artificial Intelligence*, KICKSTARTER.COM, https://www.kickstarter.com/projects/inspero/vinci-first-smart-3d-headphones-that-understand-yo (last visited Apr. 25, 2023).  ("Founded in September 2014, Inspero Inc. was started by two MIT MBA Alumni, David Zhu and Max Wu.")  The registered business address of Inspero Inc. is 315 W. 36th St., Flr 10, New York, NY 10018 (https://bbb.org/us/ny/new-york/profile/online-retailer/inspero-inc-0121-174307 (last visited Apr. 25, 2023)).

maxawei@gmail.com and spartacusfinance@gmail.com have been used to perpetrate the Spartacus DAO scheme.

## JURISDICTION AND VENUE

4.    The Court has federal jurisdiction under 28 U.S.C. § 1331 because the Complaint asserts claims under Sections 5 and 12(a)(1) of the Securities Act of 1933 ("Securities Act").

5.    The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a), which gives district courts supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

6.    The Court has personal jurisdiction over Defendant Wu because he has transacted business, maintained substantial contacts, and/or committed overt acts in furtherance of the disputed conduct throughout the United States, including in the Southern District of New York. Further, Defendant's actions were directed at, and had the intended effect of, causing injury to persons residing in, located in, or doing business throughout the United States, including in the Southern District of New York.

7.    Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant Wu is deemed to reside in any judicial district in which he is subject to the Court's personal jurisdiction, and because Defendant provides and markets his services within the United States, and in this district, thus establishing sufficient contacts to give the Court personal jurisdiction over Defendant. In addition, Defendant's conduct against Plaintiff has occurred, in part, within the state of New York as the harmful effects of Defendant's conduct were suffered within the state of New York.

8.    Further, the Court has personal jurisdiction and venue is proper over this action pursuant to Section 22 of the Securities Act, 15 U.S.C. § 77v.

**FACTUAL ALLEGATIONS**

9.      Prior to October 25, 2021, Defendant Wu—under the pseudonym "Spartacus"—
hatched a scheme to solicit an enormous amount of funds from unsuspecting persons under the
auspices of creating a pool of assets that would, as he promised, generate massive returns for these
participants, whom Defendant referred to as the "community" of "Spartacus DAO." A "DAO" is
a "Decentralized Autonomous Organization" which, in common practice, involves a group of
stakeholders coming together to make decisions, typically facilitated by a blockchain-based voting
system. By branding his scheme as a DAO, Defendant misled investors, including Plaintiff, into
believing they would have some say in the direction of the venture.

10.     In contrast to this pitch of decentralization and "community" governance,
Defendant Wu was the sole operator of Spartacus DAO with any managerial authority, which he
used to take advantage of the unsuspecting investors. From at least October 25, 2021 to the present,
Defendant engaged in a pattern of conduct that included marketing and selling unregistered
securities to Plaintiff and others. Defendant ultimately reneged on all the promises he had made
to the Spartacus DAO "community," including Plaintiff, who received nothing while Defendant
absconded with more than $35,000,000 of their invested funds.

11.     To accomplish this scheme, Defendant Wu took advantage of a popular group
investment structure wherein a group of persons contribute "liquidity" to a pool of funds.
Defendant represented that the funds would be contributed to a common "treasury" and related
cryptocurrency wallets acting as "liquidity pools," the value of which he promised would grow
through various ventures and projects that he would oversee, including employing "strategies to
earn risk-adjusted return with [community] governance." Defendant also promised to build

various products with the funds and return profits from those products to the investors, including Plaintiff.[2]

12.     In furtherance of the scheme, Defendant Wu solicited investments in his venture by publicizing and conducting a sale of blockchain-based digital asset SPA tokens ("SPA tokens" or "SPA") to Plaintiff and other U.S. persons via online platforms including Discord, Twitter, and other social media, as well as prominently on the Spartacus website and blog, and Defendant did not take any action to prevent access to these publications or sales by U.S. persons, including Plaintiff.[3]  SPA tokens are fungible blockchain-based assets that Defendant promised would be "the governance token for Spartacus DAO."[4]  Beginning on or about October 31, 2021, Defendant minted and sold 30,000 SPA tokens at a price of approximately $10 per token on a first-come, first-serve basis—including, on information and belief, to cryptocurrency wallets controlled by Defendant himself.[5]  As time went on, Defendant minted and sold more SPA tokens at various prices, on each occasion promising that the returns would be used to build value for holders of the tokens.

13.     SPA tokens are securities under federal securities law.  Purchasers of SPA, including Plaintiff, had a reasonable expectation of future profit based upon Defendant Wu's marketing of the tokens and his efforts in managing Spartacus DAO and its "treasury" and associated wallets.  Defendant represented that the funds generated from the initial offering would be used to fund Spartacus DAO's development work (including through self-interested payments

---

[2] *See* Spartacus Finance blog, *Introducing Spartacus*, https://docs.spartacus.finance/introducing-spartacus/introducing-spartacus (last visited Mar. 29, 2023); *Bonding*, https://docs.spartacus.finance/guides-to-arena/bonding (last visited Mar. 29, 2023).
[3] *See generally*, https://app.spartacus.finance/#/dashboard (last visited Mar. 29, 2023).
[4] Spartacus Finance blog, *Introducing Spartacus*, https://docs.spartacus.finance/introducing-spartacus/introducing-spartacus (last visited Mar. 29, 2023).
[5] Documentation regarding this sale was provided on the Spartacus website (*see* https://app.spartacus.finance/#/dashboard) as well as through announcements on the Spartacus Discord server (*see* https://discord.gg/WHVARU4KzV/).

to Defendant himself for said development).  Defendant promised returns on investment for purchasers of SPA, including through dividend-like instruments and an increased future value of the token on secondary markets.  Defendant also promised to build products, including a cryptocurrency exchange, that would incorporate and increase the value of SPA and related assets. In totality, Defendant promised SPA purchasers long-term, passive returns based on his purported efforts.  The success of SPA tokens, and the Spartacus DAO itself, was dependent on Defendant as the sole controller of the assets in held by Spartacus DAO via its treasury, liquidity, pools, and other assets (altogether, the "treasury").  SPA tokens are tradable on secondary markets, a fact which Defendant included in his marketing of the tokens.

14.    As a result of the foregoing, SPA tokens were sold in an unregistered offering without an applicable exemption or safe harbor.

15.    Despite his many promises, Defendant Wu only took one material action with respect to managing Spartacus DAO: disappearing with sole control of the accumulated funds.

16.    The SPA tokens were sold in an unregistered offering without an applicable exemption or safe harbor. This means that purchasers like Plaintiff did not have access to the usual disclosures that accompany the issuances of traditional securities. Rather than any material progress or matters to vote on, Plaintiff and other investors received vague, sporadic blog posts and Discord announcements describing the alleged future growth of Spartacus DAO and the SPA tokens—with increasingly less transparency as Defendant Wu's scheme began to unravel.

17.     After the initial sale, Defendant Wu actively precipitated the sale of SPA by continuing to offer and solicit purchases of the token through an extensive marketing campaign on the Spartacus website and social media.[6]

18.     Falling well short of satisfying the requirements for a prospectus under federal securities laws, these statements only served to pull investors like Plaintiff further into Defendant Wu's scam.   Over time, the "treasury" accumulated more than $35,000,000 worth of assets; however, this "treasury" was under the sole control of Defendant, who held the private keys to the blockchain-based technology holding the funds.   Defendant's promises of "community"-based control, governance, and voting that were sold to investors along with the SPA tokens led them to believe SPA could be used as pro rata shares of governance in the venture.   Instead, the substantial pool of funds has always been, and continues to be, under the sole control of Defendant.

19.     In early April 2022, approximately six months following the initial sale of SPA, nearly $61,000,000 in funds had amassed in the "treasury" under Defendant Wu's sole control.

20.     As their suspicions began to grow, investors started to raise concerns about the status of the project.  On Discord, Defendant Wu (as "Spartacus") called these concerned investors "[…value] hunters" and disregarded their complaints, promising "a rising floor for SPA and [that he would] continue to build a valu[able] foundation for SPA."   While investors clamored for answers on the lack of both progress and communication, Defendant came up with a second act for his scheme.

21.     On or about April 6, 2022, Defendant Wu (as "Spartacus") made a Discord post titled, "Announcing Spartacus 2.0: The next phase of Spartacus Finance."   In that post, Defendant

_____

[6] SPA tokens were technically sold in the form of very short-dated SPA bonds, which could be redeemed for SPA tokens over a 5-day period.  These short-dated bonds were offered continuously from early November 2021 until April 2022 and resulted in tens of millions of dollars in proceeds for the "treasury."

announced that he would be creating a new for-profit venture for Spartacus DAO and the SPA holders: a decentralized cryptocurrency exchange called Spartacus Exchange ("SPEX").

22.     In addition to setting forth a new promise of success (on which it appears Defendant Wu did not plan to deliver for anyone aside from himself), the post purported to address the concerns of the misled investors—while enticing even further investment into the scheme.  In the post, Defendant promised that current holders of SPA could redeem their tokens at an amount he referred to as their risk-free value ("RFV"), based on a "snapshot" (or recorded list of holders) taken approximately 10 minutes before the announcement.  According to Defendant, the RFV could be calculated by accounting for the value of the "treasury" in relation to the number of SPA tokens investors had already contributed to a staking pool (a particular interest-bearing disposition of SPA tokens meaning the investor had pledged their tokens to the pool in exchange for the promise of return as published by Defendant).

23.     Of course, Defendant Wu was dependent on investors not removing their funds from this staking pool.  In furtherance of the scheme, Defendant doubled down on his plan by offering certain incentives to those who did *not* redeem their SPA tokens.  In particular, he enticed investors with assurances of future returns, including "buyback[s]" of SPA, to "maintain[] constant buy pressure" which would manipulate the market for SPA and inflate its value.  Further, he promised perpetual returns to SPA holders by way of "emissions" (essentially additional token rewards paid out over time), as well as allocations of an additional, second security—the fungible token termed "SPEX."[7]

---

[7] Spartacus Finance blog, *Announcing Spartacus 2.0*, https://docs.spartacus.finance/announcing-spartacus-2.0/announcing-spartacus-2.0 (last visited Mar. 29, 2023).



24.     In addition to the appearance of progress, Defendant Wu needed to create an illusion of participatory governance.  Shortly after making the blog post, Defendant orchestrated a vote of SPA holders on April 7, 2022, where voters could respond with only a simple indication of yes or no on a proposal that included the redemption option and approval to build Spartacus 2.0. The vote passed with 99.99% in favor and 00.01% against.[8]



---

[8] *SIP-015: Spartacus 2.0 with the redemption option*, SNAPSHOT.ORG, https://snapshot.org/#/spartacusdao.eth/proposal/0x34656a7bd9e58821f4cb81d0ca374bd14fa3966235fe0 e7c03397a7045d84340 (last visited Mar. 29, 2023).

25.     The redemption option (essentially a tender offer) was sprung upon investors without warning based on a snapshot of holdings already taken and was only announced on the Spartacus Discord server, which—despite being the main channel of ongoing communication— was a forum where Defendant Wu would freely ban participants who questioned his governance from viewing or utilizing.

26.     Whether it was because investors believed in the promise of Spartacus 2.0, or because a substantial amount of them didn't even know about the vote, roughly half of the investor-held SPA tokens were not redeemed and, as a result, half of the assets held prior to April 6, 2022 remained in the "treasury" after the redemption—totaling roughly $35,000,000.

27.     On information and belief, prior to the announcement, Defendant Wu accumulated additional SPA tokens in anticipation of the redemption which he, of course, controlled.   In particular, it is believed that Defendant used 18 distinct cryptocurrency wallets to directly reap proceeds in excess of $4,300,000.   Thus, the single biggest participant in the redemption was evidently none other than Defendant himself, given his apparent control of at least 18 different participating wallets.   On information and belief, Defendant purchased SPA in the weeks leading up to the redemption announcement, thus personally profiting from his insider knowledge of the timing and price of the redemption. In addition, on information and belief, cryptocurrency wallets that Defendant controls were used to send funds to Tornado Cash; a cryptocurrency "mixer" used to obfuscate blockchain transactions that is subject to sanctions by the Office of Foreign Assets Control.

28.     Plaintiff began acquiring SPA in September 2022 and has purchased 5,382 SPA to date.   Plaintiff was persuaded to believe SPA could truly be used for governance by Defendant Wu's assurances, coupled with the misleading one-time redemption that did result in actual gains

for some investors.  As a holder of SPA tokens, Plaintiff is entitled to his share of the "treasury" and related assets pursuant to the promises made by Defendant.

29.     However, Defendant Wu evidently had no intention to build or launch Spartacus 2.0, nor to provide any type of tangible continued return to investors, nor allow SPA to be the governance token of the Spartacus DAO and its "treasury" of assets.  Instead, he disappeared for weeks at a time, while putting investors off with bland assurances of progress and leaving them in limbo as only he had access to the funds associated with the "treasury."

30.     As time dragged on with no development or adequate response, Plaintiff and the other investors came to the realization that Spartacus DAO was a scam and that Defendant Wu had deceived them.

31.     On September 22, 2022, five months after the Spartacus 2.0 announcement, Spartacus DAO investors—holders of SPA tokens who were told by Defendant Wu that their tokens were voting shares in the venture—organized and held a vote of no confidence in the Spartacus DAO leadership, namely Defendant.  The purpose of this vote—which was organized and conducted by holders of SPA and not Defendant himself—was to dissolve the Spartacus DAO and to give token holders another opportunity to redeem their tokens.  In order to pass, the vote required that both a supermajority (75%) and a quorum (20%) of SPA token holders vote in favor of dissolution.  The vote (the "Dissolution Vote") opened on September 22 and passed on September 29, 2022, with 100% of participants voting in favor of dissolution and redemption.[9]

---

[9] *SpartacusDAO Dissolution*, SNAPSHOT.ORG,
https://snapshot.org/#/spacommunity.eth/proposal/0x4996f5b5d6e33ed34638ffcc4dda7d20557b11193260
b773eae133c689b63a09 (last visited Mar. 29, 2023).



32.    In a breach of his contractual promises to treat the holders of SPA as governing members of the Spartacus DAO project, Defendant Wu took issue with the Dissolution Vote when it was proposed and subsequently refused to act in accordance with its results.  Both during and after the Dissolution Vote, Defendant posted derogatory comments on Discord, calling voters RFV "looters" and "hunters" while simultaneously affirming SPA's status as a security dependent on his efforts.




33.     Defendant Wu subsequently ignored all calls for him to honor his promises and relinquish control of the "treasury," and on January 3, 2023, Plaintiff's counsel sent a demand letter to Defendant via email at maxawei@gmail.com and spartacusfinance@gmail.com. That letter, a true and correct copy of which is attached as **Exhibit A**, identified Defendant as the founder of the Spartacus DAO and owner of the wallet addresses holding the funds at issue, and made demand that Defendant honor the Dissolution Vote. At no time did Defendant deny the allegations (including his status as founder and owner of the wallet addresses identified) or otherwise take action to honor the Dissolution Vote, but his subsequent actions on Discord show that he indeed received the demand letter. Specifically, after weeks of absence, Defendant returned to Discord on January 16, 2023, which was 6 days after the deadline set in Plaintiff's demand letter. While Defendant failed to honor the Dissolution Vote, he offered a series of excuses to the token holders and promised to "come back with plans forward," showing that he had received the letter and the demand for next steps. But, consistent with his past practice, Defendant vanished once more, only to reappear on March 10, 2023, with the suggestion that he "diversify" the "treasury's" assets (more than $35,000,000, all under Defendant's control).

34.     As one community member described Defendant Wu's statement: the comment by Defendant "after months of ghosting" following the Dissolution Vote amounted to "another 'take it or leave it' omnibus proposal that ignore[d] all community input" contrary to promises of the exact opposite made during the members' initial investments.



35.     But Defendant Wu's proposal to "diversify" the treasury assets by removing them from the treasury wallets was suspicious because it specifically sought to "diversify" the funds into risky DeFi strategies that are prone to hacking, manipulation, and other risks not associated with traditional financing. Moreover, Defendant's "diversification strategy" and the risks it posed was not approved by the governing holders of SPA tokens.

36.     These DeFi strategies involve significant risks of loss due to their speculative nature, use of emerging technology, practical issues, and being prone to hacking, manipulation, or technical glitches and errors.[10] Although "diversification" in traditional finance is sometimes a good thing, in this case, the uncalled-for transition of stablecoin treasury balance into other, riskier, assets, is a suspect suggestion.

37.     In fact, the Spartacus DAO community wholly rejected this proposal, and called for Defendant Wu to explain his absence and failure to uphold the results of the Dissolution Vote.

---

[10] *See e.g.*, Stephen Katte (Mar 6, 2023). *7 DeFi protocol hacks in Feb see $21 million in funds stolen: DefiLlama*, COINTELEGRAPH, https://cointelegraph.com/news/7-defi-protocol-hacks-in-feb-sees-21-million-in-funds-pilfered-defillama; Paul Vigna (Apr. 22, 2022). *Crypto Thieves Get Bolder by the Heist, Stealing Record Amounts*, THE WALL STREET JOURNAL, https://www.wsj.com/articles/crypto-thieves-get-bolder-by-the-heist-stealing-record-amounts-11650582598; *See also* King and Spalding (Sept. 1, 2021). *Decentralized Finance—Risks, Regulation, and the Road Ahead*, JDSUPRA.COM, https://www.jdsupra.com/legalnews/decentralized-finance-risks-regulation-9351911/; Chainalysis Team (Apr. 14, 2022). *Hackers Are Stealing More Cryptocurrency From DeFi Platforms Than Ever Before*, CHAINALYSIS, https://blog.chainalysis.com/reports/2022-defi-hacks/.  True and correct screenshots of these webpages captured on Apr. 25, 2023 are attached hereto as **Exhibits B** through **E** respectively.

Further, the community—as it had done for months—demanded transparency with respect to the use of funds being held in "treasury" or otherwise for the benefit of the Spartacus DAO (including funds that had apparently been sent to unapproved or personal addresses).

38.     In response, Defendant Wu organized a vote of SPA holders regarding his "diversification" proposal (the "Diversification Vote"), which failed with 99.96% of represented interests voting no as shown below.



39.     In introducing this proposal, Defendant Wu explicitly stated: "any allocation of the treasury assets will be subject to community vote."



40.     And yet, Defendant Wu has nearly immediately reneged, again, on this promise.

41.     Despite the overwhelming vote of "no" and related community sentiment demanding dissolution and redemption according to the September Dissolution Vote, Defendant Wu has communicated an intent to override the results of the failed Diversification Vote.

42.     Following the results of the Diversification Vote, Defendant Wu expressed anger in the Discord, referring to persons who voted against the proposal as "malicious voters" and banning (removing from the application) users who questioned him or raised concerns about his breach of the Dissolution Vote and lack of transparency.

43.     In particular, Defendant Wu represented that he intended to ignore the results of not only the Dissolution Vote, but also the Diversification Vote, by removing assets from the treasury despite the clear direction not to from governance voters that held SPA. In response to questions from the community, Defendant stated:



44.     To date, Defendant Wu has not allowed SPA holders to redeem their tokens despite the Dissolution Vote results which clearly satisfied supermajority and quorum requirements. Further, Defendant has signaled an intention to breach the results of a second vote—placing the assets of the treasury (including those of Plaintiff's) at significant risk of permanent loss.

45.     Based on the facts set forth above, Defendant Wu (1) breached his contractual obligations to Plaintiff, (2) sold unregistered securities in violation of federal securities law, (3) was unjustly enriched by these actions, and (4) has retained money owed to Plaintiff.  As a result of Defendant's actions, Plaintiff brings claims to recover compensatory damages in an amount to be determined at trial, seeks equitable relief in the form of an immediate injunction to maintain the status quo as to the funds at issue and ultimately receive specific performance for the effectuation of the Dissolution Vote, the imposition of a constructive trust, an accounting, seeks rescissory damages, and any other relief that this Court deems proper and just.

## CAUSES OF ACTION

### COUNT I
### Breach of Contract

46.     Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

47.     Plaintiff and Defendant Wu entered into a contract when Plaintiff purchased SPA tokens in reliance on Defendant's promises.  In exchange for Plaintiff's purchase, Defendant promised to implement certain features to support the Spartacus DAO, to help investors like Plaintiff generate profits from their purchased tokens, and to allow for token redemption opportunities.  In addition, Defendant promised that SPA holders would have governing rights in the Spartacus DAO, including with respect to how funds would be used, as well as when and whether to redeem them.  Defendant has yet to perform any of their contractual obligations to Plaintiff and has not honored the results of the no confidence vote to allow Plaintiff to redeem their SPA tokens.  Further, the value of SPA tokens has at times decreased dramatically since the time of the vote and will likely continue to decrease while Defendant improperly withholds Plaintiff's funds.

48.     As a direct and proximate result of Defendant Wu's conduct, Plaintiff has suffered substantial damages in an amount to be determined at trial.

### COUNT II
### Unregistered Offer and Sale of Securities
### Sections 5 and 12(a)(1) of the Securities Act of 1933

49.     Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

50.     Section 5(a) of the Securities Act states: "Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly (1) to make use of any

means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or (2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale."  15 U.S.C. § 77e(a).

51.    Section 5(c) of the Securities Act states: "It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under section 77h of this title."  *Id*. § 77e(c).

52.    Defendant Wu promoted, solicited, or sold SPA tokens and SPA bonds to Plaintiff through the internet, Discord, and other forms of electronic communication.  Thus, Defendant used instruments of communication in interstate commerce to offer to sell or to sell securities, or to carry or cause such securities to be carried through the mails or in interstate commerce for the purpose of sale or for delivery after sale.  No registration statements have been filed with the SEC or have been in effect with respect to any of the offerings alleged herein as required by Section 5 of the Securities Act, 15 U.S.C. § 77e.

53.    Section 12(a)(1) of the Securities Act provides in relevant part: "Any person who offers or sells a security in violation of section 77e of this title . . . shall be liable, subject to subsection (b), to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security

with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security." *Id.* § 77(a)(1).

54.     At the time of issuance, the SPA tokens and SPA bonds were securities within the meaning of Section 12(a)(1) of the Securities Act, 15 U.S.C. § 77e(c) because they involved an investment in a common enterprise with the expectation that profits or other gain would be produced by others' efforts, as demonstrated by the foregoing allegations.

55.     As demonstrated above, Defendant Wu has violated Sections 5(a), 5(c), and 12(a)(1) of the Securities Act, and Plaintiff seeks rescissory damages regarding their purchase of SPA tokens within the last three years and within one year from when an investor could adequately plead that SPA tokens are a security. *Id.* § 77m.

## <u>COUNT III</u>
**Unjust Enrichment**

56.     Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

57.     Defendant Wu has been enriched at Plaintiff's expense such that it would be against equity and good conscience to permit Defendant to retain the money that Plaintiff is owed.

58.     Upon information and belief, Defendant Wu has benefited from withholding Plaintiff's investment funds by using the money to further development of other projects with no benefit to Plaintiff and for Defendant's personal gain.

59.     It is against equity and good conscience to permit Defendant Wu to retain the money that Plaintiff is owed due to Defendant's own conduct through breach of contract (described in Count I above) and by performing other illegal or inequitable actions to damage Plaintiff. Defendant has chosen not to honor the promises he made related to governance by SPA token

holders during their initial investments and has instead refused to allow those holders to redeem their rightfully-owned tokens pursuant to the Dissolution Vote or at any time.

60.     As a direct and proximate result of Defendant Wu's wrongful retention of Plaintiff's investment funds, Defendant has been unjustly enriched at Plaintiff's expense.

<u>COUNT IV</u>
**Money Had and Received**

61.     Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

62.     Defendant Wu obtained money belonging to Plaintiff when Plaintiff purchased SPA tokens from Defendant.  Said tokens were purchased by Plaintiff with the expectation of profit and the understanding that Defendant would allow Plaintiff to redeem the tokens at a later date.

63.     Upon information and belief, Defendant Wu has benefited from withholding Plaintiff's investment funds by using the money to further development of other projects or for personal reasons with no benefit to Plaintiff, resulting in Defendant's personal gain and withholding of the funds from Plaintiff.

64.     Plaintiff and other investors have voted for redemption opportunities purportedly afforded to them by the governance described by Defendant Wu during their initial investments; however, Defendant has unilaterally refused to allow Plaintiff to redeem their tokens.  Thus, under principles of equity and good conscience, Defendant should be required to honor his initial promises, as well as the results of the second redemption vote, and should not be permitted to unjustly withhold Plaintiff's funds.

## COUNT V
## Specific Performance

65.     Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

66.     As set forth above, Plaintiff and other investors purchased SPA tokens in exchange for Defendant Wu's promises, including Defendant's promise that SPA holders would have governing rights in the Spartacus DAO, such as with respect to how funds would be used, as well as when and whether to redeem them.

67.     On September 22, 2022, holders of SPA tokens—including Plaintiff—organized and voted to dissolve the Spartacus DAO and to give token holders another opportunity to redeem their tokens.

68.     Pursuant to Defendant Wu's promises and the Dissolution Vote, Defendant was obligated to dissolve the Spartacus DAO and redeem token holders' tokens.

69.     Defendant breached his promises to SPA holders by refusing to honor the vote and to date has not cured that breach.

70.     Failure to cure that breach leaves Plaintiff with no adequate remedy at law. The anonymous nature of cryptocurrency and the risk that Defendant Wu will use Tornado Cash to launder the cryptocurrency inhibits Plaintiff's ability to trace or otherwise monitor the funds that it invested in the DAO, which causes immediate harm given Defendant's actions which suggest that Defendant intends to transfer funds beyond Plaintiff's reach.  Accordingly, Plaintiff faces the prospect of immediate and continued irreparable harm unless Defendant is ordered to honor the SPA holders' vote and dissolve the Spartacus DAO and redeem token holders' tokens.

71.     Plaintiff is entitled to an order requiring Defendant Wu to honor the SPA holders' vote to dissolve the Spartacus DAO and redeem token holders' tokens.

<u>**COUNT VI**</u>
**Imposition of a Constructive Trust**

72.     Plaintiff repeats and realleges each allegation in the preceding paragraphs as if fully set forth herein.

73.     Plaintiff requests this Court to impose a constructive trust upon the property taken from Plaintiff that is currently held by Defendant Wu, and further calls for the restoration to Plaintiff of that wrongfully obtained property.

74.     As set forth above, Defendant Wu, through misleading statements, broken promises, and unlawful acts has obtained and held Plaintiff's cryptocurrency, which in equity and good conscience he should not be permitted to hold.

75.     Plaintiff and Defendant Wu are in a confidential or fiduciary relationship, as Plaintiff entrusted Defendant with his investment.

76.     Further, as set forth above, Plaintiff purchased SPA tokens from Defendant Wu in reliance on Defendant's promises.  Plaintiff only invested in SPA tokens and Spartacus DAO based on Defendant's promises to develop products and governance features related to those securities, including promises to provide investors with governance rights.

77.     As a result, Defendant Wu has been unjustly enriched.

78.     Upon information and belief, Defendant Wu, after obtaining from Plaintiff cryptocurrency (including pro rata amounts due to Plaintiff from the treasury), has since improperly transferred some of those assets to accounts not approved by Plaintiff, including Defendant's personal accounts, where they are now believed to be held or have been held in trading accounts under his personal name or in other blockchain-based wallets such that the amount owed to Plaintiff from the "treasury" and associated assets is spread across various known and unknown wallets under the sole control of Defendant.

79.     Any and all of Plaintiff's assets being held by Defendant Wu must be held in trust for Plaintiff's benefit, as Defendant is not entitled to the benefit of wrongfully misappropriated funds and cryptocurrency assets that were taken by Plaintiff.

80.     The cryptocurrency assets at issue are specific, identifiable property and can be traced to certain blockchain-base addresses.

<u>COUNT VII</u>
**Equitable Accounting**

81.     Plaintiff repeats and realleges each allegation in the preceding paragraphs as if fully set forth herein.

82.     Plaintiff and Defendant Wu are in a confidential or fiduciary relationship, as Plaintiff entrusted Defendant with his investment.

83.     Plaintiff transferred purchased SPA tokens from Defendant Wu in reliance on Defendant's promises.  Plaintiff only invested in Spartacus DAO based on Defendant's promises to develop products and governance features related to those securities, including promises to provide investors with governance rights.

84.     There have been repeated demands for transparency and an explanation for the use of assets controlled by Defendant on behalf of Spartacus DAO investors, including Plaintiff. Despite repeated requests from these investors, Defendant has not provided any investor, including Plaintiff, with necessary information regarding the assets in the treasury or associated with the Spartacus DAO.

85.     Plaintiff has no adequate remedy at law, as he is presently unaware of what types of assets make up the treasury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment against Defendant Wu, awarding Plaintiff:

(1) compensatory damages in an amount to be determined at trial,

(2) rescissory damages,

(3) imposition of a constructive trust over the property taken and held from Plaintiff that is currently held by Defendant, and further demand the restoration to Plaintiff of that wrongfully obtained and held property;

(4) an injunction requiring Defendant to honor the SPA holders' votes to dissolve the Spartacus DAO and redeem token holders' tokens,

(5) an injunction preventing Defendant from transferring or otherwise converting the assets in the Spartacus DAO treasury other than to comply with the foregoing,

(6) equitable accounting, and

(7) any other relief the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b).

Dated:  April 26, 2023

Respectfully submitted,


John R. Hardin
**PERKINS COIE LLP**
500 N. Akard Street, Suite 3300
Dallas, TX 75201-3347
Tel:  (214) 965-7700
Fax:  (214) 965-7799
JohnHardin@perkinscoie.com
(*Admitted to practice pro hac vice*)

Will M. Conley
**PERKINS COIE LLP**
33 E. Main Street, Suite 201
Madison, WI 53703-3095
Tel:  (608) 663-7460
Fax:  (608) 663-7499
WConley@perkinscoie.com
(*Admitted to practice pro hac vice*)

By*: /s/ Emily B. Cooper*                          
   Emily B. Cooper
   ECooper@perkinscoie.com
   Hellen Park
   HPark@perkinscoie.com
   **PERKINS COIE LLP**
   1155 Avenue of the Americas, 22nd Floor
   New York, NY 10036-2711
   Tel:   (212) 262-6900
   Fax:  (212) 977-1649

   *Attorneys for Plaintiff*
   *Patagon Management LLC*