**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| **PATAGON MANAGEMENT LLC**, | **Case No. 1:23-cv-02742-VM** |
| Plaintiff, | **Hon. Victor Marrero** |
| -against- | |
| **WEI "MAX" WU**, | **[PROPOSED] EX PARTE TEMPORARY RESTRAINING ORDER, ORDER GRANTING ALTERNATIVE SERVICE, AND ORDER TO SHOW CAUSE REGARDING PRELIMINARY INJUNCTION** |
| Defendant. | |

Plaintiff Patagon Management LLC ("Plaintiff") has filed an amended complaint for injunctive relief to stop Defendant Wei "Max" Wu ("Defendant") from absconding with, transferring, or otherwise converting more than $35,000,000 of investor assets.

Plaintiff filed an Amended Complaint alleging breach of contract (Count I), unregistered offer and sale of securities under Sections 5 and 12(a)(1) of the Securities Act of 1933 (Count II), unjust enrichment (Count III), money had and received (Count IV), specific performance (Count V), imposition of a constructive trust (Count VI), and a request for equitable accounting (Count VII). Plaintiff has applied *ex parte* for an emergency temporary restraining order and an order to show cause why a preliminary injunction should issue under Federal Rule of Civil Procedure 65.

Upon Plaintiff's Amended Complaint, the Declaration of Will M. Conley, the Affidavit of Diogenes Casares, all accompanying exhibits of the foregoing, and all other documents submitted in this action, the Court hereby GRANTS Plaintiff's application for an *ex parte* temporary restraining order as follows:

**THE COURT HEREBY FINDS THAT:**

**<u>Jurisdiction and Venue</u>**

1.      The Court has federal jurisdiction under 28 U.S.C. § 1331 because the Amended Complaint asserts claims under Sections 5 and 12(a)(1) of the Securities Act of 1933 ("Securities Act").

2.      The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a), which gives district courts supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3.      The Court has personal jurisdiction over Defendant because he has transacted business, maintained substantial contacts, and/or committed overt acts in furtherance of the disputed conduct throughout the United States, including in the Southern District of New York. Further, Defendant's actions were directed at, and had the intended effect of, causing injury to persons residing in, located in, or doing business throughout the United States, including in the Southern District of New York.

4.      Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which he is subject to the Court's personal jurisdiction, and because Defendant provides and markets his services within the United States, and in this district, thus establishing sufficient contacts to give the Court personal jurisdiction over Defendant. In addition, Defendant's conduct against Plaintiff has occurred, in part, within the state of New York as the harmful effects of Defendant's conduct were suffered within the state of New York.

5.      Further, the Court has personal jurisdiction and venue is proper over this action pursuant to Section 22 of the Securities Act, 15 U.S.C. § 77v.

## Temporary Restraining Order Factors

The Court finds that Plaintiff has established each of the factors required for a temporary restraining order: (1) irreparable harm; (2) a likelihood of success on the merits or a substantial question as to the merits; (3) the balance of hardships tips in Plaintiff's favor; and (4) a temporary restraining order serves the public interest. *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 34 (2d Cir. 2010).

## Irreparable Harm

1.      Plaintiff has established that it will suffer immediate, irreparable harm if this Court denies its request for a temporary restraining order to freeze the digital assets currently held in cryptocurrency wallets identified in Paragraph 32 of the attached Affidavit of Diogenes Casares (the "DAO treasury") and any other blockchain-based wallet that contains assets associated with the Spartacus DAO (including SPA or DAI) that is under control of Defendant.

2.      In particular, Plaintiff has shown that Defendant's course of conduct and recent communications show that there is a significant risk that Defendant may dissipate the assets in the DAO treasury or transfer those funds into untraceable cryptocurrency accounts.  Plaintiff has shown that, because cryptocurrency transactions are instantaneous and anonymous, it is imperative to freeze the assets in the DAO treasury to maintain the status quo to avoid the dissipation of the digital assets held by Defendant.

## Likelihood of Success on the Merits

3.      Plaintiff has shown at a minimum that its complaint presents a substantial question as to each of its claims, and indeed that it is likely to succeed on the merits of its claims. *See Sterling v. Deutsche Bank Nat'l Tr. Co. as Trustees for Femit Tr. 2006-FF6*, 368 F. Supp. 3d 723, 727 (S.D.N.Y. 2019).

4.      *Breach of Contract*.  Plaintiff has shown a likelihood of success on the merits of its claim that Defendant has breached his contractual obligations having entered into an enforceable contract pursuant to which there has been a lack of performance by Defendant that has left Plaintiff harmed.  Plaintiff and Defendant entered into a contract when Plaintiff purchased SPA tokens from Defendant, and in exchange, Defendant promised to implement certain features to support the Spartacus DAO to help investors like Plaintiff generate profits from their purchased tokens and allow for token redemption opportunities.   Additionally, Defendant breached his contractual promises to treat the holders of SPA as governing members of the Spartacus DAO project.  As a result, Plaintiff suffered damages by, among other things, Defendant refusing to redeem the SPA tokens.

5.      *Unjust Enrichment*.  Plaintiff has shown a likelihood of success on the merits of its claim that Defendant has been unjustly enriched because Defendant has accepted the direct benefits of his violation of his agreement with Plaintiff.  Here, Plaintiff alleges that Plaintiff and other investors purchased SPA tokens from Defendant under the terms of an agreement relating to the SPA tokens.  However, Defendant has yet to deliver on any of his obligations under that agreement—primarily with respect to such tokens being voting, equity interests in the venture— but also with respect to issuing dividend-like instruments, building products like a cryptocurrency exchange that would incorporate and increase the value of SPA and related assets, or further developing any other projects through the DAO.  Defendant's unlawful refusal to return the assets in the DAO treasury has inequitably enriched Defendant.

6.      *Money Had and Received*.  Plaintiff has shown a likelihood of success on the merits of an action for money had and received.   Plaintiff alleged that Defendant obtained money belonging to Plaintiff when Plaintiff purchased SPA tokens from Defendant.  Plaintiff purchased

these tokens expecting a profit and with the understanding that Defendant would permit Plaintiff to redeem the token at a future date.  Instead, Defendant appears to have transferred assets to personal accounts, or otherwise withdrawn or misused funds.  Finally, despite the token holders voting to dissolve the DAO and redeem the SPA tokens, Defendant continues to withhold the funds.

7.      *Unregistered offer and sale of securities under Sections 5 and 12(a)(1) of the Securities Act of 1933*.  Plaintiff has shown a likelihood of success on the merits that Plaintiff will establish each element of its Section 5 and Section 12 claims.

a.  *Section 5*.  Plaintiff has shown a likelihood of success on the merits that the tokens represented equity interests in a for-profit venture, were variably priced bearer instruments marketed as and capable of sale on secondary markets, and Defendant created reasonable expectations of profit for persons such as Plaintiff as investors in SPA tokens who were reliant on the efforts of Defendant.

b.  *Section 12*.  Plaintiff has shown a likelihood of success on the merits that, at the time of issuance, the SPA tokens and SPA bonds were securities within the meaning of Section 12(a)(1) of the Securities Act because they involved an investment in a common enterprise with the expectation that profits or other gain would be produced by others' efforts.  Defendant actively publicized and conducted the sale of the SPA tokens via online platforms including Discord, Twitter and other social media, as well as prominently on the Spartacus website and blog.  These promotional efforts evidence that Defendant engaged in steps necessary to the distribution of the unregistered securities.

8.     *Specific Performance*.  Plaintiff has shown a likelihood of success on the merits of its claim for specific performance.  Plaintiff has shown that the parties entered into a binding contract when Plaintiff purchased SPA tokens from Defendant and, in exchange, Defendant promised to give governing rights in the Spartacus DAO to token holders, including with respect to how the funds would be used and when and whether to redeem them.  Therefore, when the SPA token holders, including Plaintiff, voted to dissolve Spartacus DAO and redeem the tokens, Defendant was obligated and able to do so.  However, Defendant did not dissolve Spartacus DAO and redeem tokens.  Plaintiff has shown that Plaintiff has no adequate remedy at law.

9.     *Constructive Trust*.  Plaintiff has shown a likelihood of success on the merits on its claim for a constructive trust.  Plaintiff has shown that Plaintiff purchased SPA tokens relying on Defendant's promises that token holders would have voting rights in how Spartacus DAO was run and managed and would have rights over token redemption.  Plaintiff alleged that Defendant has obtained and wrongfully held Plaintiff's cryptocurrency, which in equity and good conscience he should not be permitted to hold.  After obtaining these funds, including pro rata amounts due to Plaintiff from the treasury, Defendant has since transferred some of these assets to his own personal accounts and is trading with those funds under his personal name.  Plaintiff, therefore, has shown a likelihood of success on the merits that a constructive trust should be imposed to make Plaintiff whole.

10.    *Accounting*.  Plaintiff has shown a likelihood of success on the merits on its claim for an equitable accounting.  Plaintiff and Defendant are in a fiduciary relationship in which Plaintiff entrusted Defendant with a monetary investment, thus satisfying both the first and second prongs of a claim for equitable accounting.  The anonymous nature of cryptocurrency and the risk that Defendant will use Tornado Cash to launder the cryptocurrency inhibits Plaintiff's ability to

trace or otherwise monitor the funds that it invested in the DAO, which causes immediate harm given Defendant's actions to transfer funds beyond Plaintiff's reach.  As such, Plaintiff has no adequate remedy at law.  Finally, investors have demanded transparency regarding the assets in the DAO treasury, and Defendant has not provided that transparency.

### Balance of the Hardships

11.     Plaintiff has also demonstrated that the balance of hardships tips in its favor.

12.     Plaintiff would be severely prejudiced if Defendant dissipates the funds wrongfully withheld from Plaintiff, and Defendant faces no such prejudice.

13.     Defendant faces no harm from freezing the treasury assets and maintaining the status quo, while Plaintiff will face irreparable harm.

### Public Interest

14.     Plaintiff has shown that the public interest favors granting a preliminary injunction.

15.     The public interest would be served by protecting against the risk that funds, such as those belonging to Plaintiff, will be illegally transferred, and by promoting the objective of the Financial Crimes Enforcement Network (FinCEN) by assuring the public that courts will protect investors' assets from bad actors and aid investors in their recovery of wrongfully withheld assets when they can be readily located and traced to specific locations rather than waiting until after the funds have been transferred out to untraceable cryptocurrency accounts.

16.     Furthermore, the public interest is clearly served by enforcing statutes designed to protect the public, such as the Securities Act of 1933.

## TEMPORARY RESTRAINING ORDER

I.  **ORDERED**, that Plaintiff has established each of the factors required for a temporary restraining order: (1) immediate, irreparable harm; (2) a likelihood of success on the merits or a substantial question as to the merits; (3) that the balance of hardships tips in Plaintiff's favor; and (4) a temporary restraining order serves the public interest. C*itigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd*., 598 F.3d 30, 34 (2d Cir. 2010).

II. **ORDERED**, that Defendant Wei "Max" Wu, and anyone acting in concert with Defendant, are temporarily restrained and enjoined, from anywhere in the world, from taking any action to abscond with, transfer, remove, or otherwise move assets in the following cryptocurrency wallets, and any other blockchain-based wallet that contains assets associated with the Spartacus DAO (including SPA or DAI) that is under control of Defendant:

    i.   0xFa5a5F0bC990Be1D095C5385Fff6516F6e03c0a7

    ii.   0x8CFA87aD11e69E071c40D58d2d1a01F862aE01a8

    iii.   0xB7396019BC1Ee7E771155D138D57Ee9aBf16F5b4

    iv.   0x251616944e771cD83d57aB7b073D291FE841A4DF

III. Upon service as provided for in this Order, Defendant shall be deemed to have actual notice of the issuance and terms of the Temporary Restraining Order, and any act by Defendant in violation of any of the terms of the Temporary Restraining Order may be considered and prosecuted as contempt of Court.

## Security for Temporary Restraining Order

I.    **ORDERED**, that Plaintiff shall not be required to provide a bond in support of this temporary restraining order.

## ORDER PERMITTING ALTERNATIVE SERVICE

I.    **ORDERED**, that the Court finds good cause continues to exist to grant alternative service of the filings in this matter, including documents initiating this matter, including the Amended Complaint, Summons, *Ex Parte* Application and supporting papers, and the Orders herein, via two email addresses believed to be associated with Defendant (maxawei@gmail.com; spartacusfinance@gmail.com), by non-fungible token at blockchain-based addresses believed to be associated with Defendant, and in the Discord forum where Defendant is known to be active, because Plaintiff has established that traditional service methods would be futile. Given the online nature of Defendant's conduct, alternative service is most likely to give Defendant notice of the filings pertaining to this lawsuit.

II.   **ORDERED**, that good cause having been shown, service of the foregoing papers shall be made on Defendant within ten (10) days of the undersigned date.

## ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION HEARING

I.    **IT IS FURTHER ORDERED**, that on _____, 2023, at _____, Defendant shall appear and show cause before the Honorable Victor Marrero, United States District Judge of the United States District Court for the Southern District of New York, why a preliminary injunction pursuant to Federal Rule of Civil Procedure 65 should not be granted, which preliminary injunction would enjoin and restrain Defendant from, directly or indirectly, anywhere in the world, taking any action to abscond with, transfer, remove,

or otherwise move assets in the following cryptocurrency wallets, and any other blockchain-based wallet that contains assets associated with the Spartacus DAO (including SPA or DAI) that is under control of Defendant:

    i.   0xFa5a5F0bC990Be1D095C5385Fff6516F6e03c0a7

    ii.   0x8CFA87aD11e69E071c40D58d2d1a01F862aE01a8

    iii.   0xB7396019BC1Ee7E771155D138D57Ee9aBf16F5b4

    iv.   0x251616944e771cD83d57aB7b073D291FE841A4DF

**<u>Failure to Oppose Will Result in Preliminary Injunction</u>**

**IT IS FURTHER ORDERED THAT**, Defendant is hereby put on notice that failure to attend the preliminary injunction hearing scheduled herein shall result in the issuance of a preliminary injunction, and that failure of the Defendant to oppose the preliminary injunction, may result in the issuance of a preliminary injunction, which shall extend through the pendency of this action, depending on whether or not Defendant appears as directed for the preliminary injunction hearing.  Defendant shall be deemed to have actual notice of the issuance and terms of the preliminary injunction, and any act by Defendant in violation of any of the terms of the preliminary injunction may be considered and prosecuted as contempt of Court.

DATE:

HOUR:                                                                                SO ORDERED:

                                           _____

                                           Hon. Victor Marrero
                                           United States District Judge